IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 11-cv-00118-LTB

LARRY LEE MONTOYA,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER

---

     Plaintiff Larry Lee Montoya appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

### I.  Statement of the Case

     Following the initial denial of Plaintiff's application for benefits, a hearing was held before an administrative law judge (the "ALJ") on May 6, 2008. On November 20, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's November 20, 2008 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

### II.  Statement of Facts

**A. Background**

Plaintiff was 39 years old on his September 9, 2003 alleged disability onset date. Administrative Record ("AR") 39.  Plaintiff completed the 11th grade and received a high school equivalency diploma.  AR 30.  Plaintiff worked in the past as a carpet installer, asphalt paver operator, and operating engineer, all of which require medium to heavy exertion.  AR 46 & 143. Plaintiff last worked as a yard man/automobile dismantler.  AR 248.  Plaintiff alleges that he became disabled on September 9, 2003 after the rear end of a truck fell on him causing an inguinal hernia for which he underwent surgery in October of 2003.  AR 119 & 214. Specifically, Plaintiff alleged disability due to right leg nerve/muscle damage and a lacerated tendon in his right arm.  AR 119.

Following his October 2003 inguinal hernia repair surgery, Plaintiff's was treated by James F. Lineback, M.D., for ongoing groin pain and prescribed anti-inflammatory medication and a heating pad.  AR 225.  Plaintiff returned to work early in 2004 for some period of time but stopped working due to abdominal pain near the scar from his inguinal hernia repair surgery. AR 245.  In March of 2004, Dr. Lineback told Plaintiff he could not continue to work as a yard man and recommended vocational rehabilitation for a position that would not aggravate his groin pain. *Id.*

In June of 2004, Dr. Lineback re-evaluated Plaintiff and found no evidence of recurrent hernia but noted pain near the surgical scar that he again treated with anti-inflammatory medication and a heating pad.  AR 227 & 246.  Again, Dr. Lineback opined that it was unlikely that Plaintiff would be able to return to work as a yard man and that he should be re-trained for a less physically demanding job that would not aggravate his groin pain.  AR 221.  Dr. Lineback

again evaluated Plaintiff in January of 2005 and made essentially the same findings and recommendations for treatment.  AR 246.

In April and May of 2005, Douglas Eaton, M.D. evaluated Plaintiff in connection with his worker's compensation claim.  Ar 290-98.  Dr. Eaton noted that Plaintiff had inguinal pain "status post hernia repair" and opined that he was to "continue temporary total disability."   AR 291 & 296.  Dr. Eaton referred Plaintiff to a surgeon for consultation.  AR 291 & 297.

In June of 2005, G. Y. Hadjian, M.D, a hernia surgery specialist, evaluated Plaintiff and concluded that he had post-operative pain in his right groin and a left inguinal hernia and possibly post-operative pain syndrome and neuropathy in his right groin.  AR 237.   Dr. Hadjian recommended left inguinal hernia repair, further treatment for Plaintiff's right groin, pain control, and a possible neurectomy.  AR 238.  Dr. Hadjian further opined that Plaintiff was totally disabled for eight weeks pending surgery and pain management but should ultimately be able to return to his position as a yard man.  AR 239.  Ancel Rogers, M.D., a general surgeon, similarly recommended left inguinal hernia repair.  AR 249.

Dr. Eaton continued to treat Plaintiff.  Then, in January of 2006, Ronald N. Kent, M.D., Ph.D., performed a neurological evaluation on Plaintiff.   Dr. Kent diagnosed Plaintiff with right genitofemoral neuropathy, status post inguinal hernia repair and recommended that Plaintiff's pain be treated with Neurontin initially to possibly be followed by nerve blocks and surgery.  AR 253.

In March of 2006, Dr. Eaton noted that he would consider closing Plaintiff's case if his symptoms continued to improve but that Plaintiff should remain on temporary total disability through April.  AR 260.  In April, Plaintiff presented to Dr. Eaton with a lesion on his right leg.

AR 256.  Dr. Eaton opined that Plaintiff remained temporarily totally disabled.  *Id.*

In July of 2006, Michael Bowen, M.D., diagnosed Plaintiff with a tendon rupture in his right biceps and referred Plaintiff for a surgical evaluation.  AR 172.  In August of 2006, Todd R. Knauf, P.A.-C, noted that Plaintiff suffered from left shoulder pain, a history of recent tendon laceration in his right arm, neuropathy of the right leg, and abdominal pain secondary to umbilical surgery.  AR 213.  Mr. Knauf opined that Plaintiff was "essentially totally disabled." *Id.*

In December of 2006, Alan Ketelhohn, a state agency orthopedist, reviewed the medical record and completed a residual functional capacity assessment.  AR 182-89.  Dr. Ketelhohn opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for about 6 hours in an 8-hour workday; sit with normal breaks for about 6 hours in an 8-hour work day; and never climb ladders, ropes, or scaffolds.  AR 183-84.  Dr. Ketelhohn found that Plaintiff's statements regarding his condition were "not very credible" and gave no weight to Mr. Knauf's opinion that was Plaintiff was "essentially totally disabled" on the basis that this opinion was reserved for the Commissioner. AR 188.

Plaintiff saw Mr. Knauf on a few more occasions in 2007.  AR 211, 310, 311-13. Plaintiff's complaints during this time period included shortness of breath, heart palpitations, muscle spasms, and back pain.  AR 310-11.

In April of 2008, Pratheep Arora, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  AR 303-308.  Dr. Arora opined that Plaintiff could not do any lifting or carrying; use his right hand to perform work-related activities;

4

perform any postural activities including climbing, stooping, or kneeling; or be exposed to most

environmental workplace conditions including moving mechanical parts and operating a motor

vehicle.  AR 303 & 305-307.  Dr. Arora further opined that Plaintiff could sit and walk for about

2 hours in an 8-hour work day and stand for about 30 minutes in an 8-hour work day.  AR 304.

Dr. Arora identified "laceration of right tendon upper arm" to support her opinion that Plaintiff

could not use his right hand to perform work-related activities (AR 305) and "unable to use right

dominant hand' and "asthma" to support her opinion that Plaintiff could not tolerate exposure to

all but one environmental workplace conditions (AR 307).  Dr. Arora did did not identify any

particular medical or clinical finding to support the remainder of her opinions.  AR 303, 304 &

306.

**B.  Plaintiff's Disability Hearing**

At the hearing May 6, 2008 hearing, Plaintiff testified that his ability to work was limited

because he had difficulty walking, sitting, standing, and using his hands for fine manipulation.

AR 30-4.  Plaintiff testified that he took ibuprofen for pain two to three times per week but that

the other pain medications he had tried made him feel "abnormal."  AR 29-30.

The ALJ asked Martin Brauer, a vocational expert, if an individual of the same age,

education, and work skill history as Plaintiff who was able to perform work requiring a light

level of exertion with an opportunity to alternate positions between sitting and standing at will

and no more than occasional overhead lifting, stooping, or kneeling could perform Plaintiff's

past relevant work.  AR 46.  The VE responded that such an individual could not perform

Plaintiff's past relevant work.  *Id.*

The ALJ then asked the VE whether there were other jobs exiting in significant numbers

in the national or regional economy that a person with the identified limitations was capable of performing.  AR 47.  The VE responded that such a person could work as a dispatcher, gate guard, and information clerk.  *Id.*  With an additional limitation of no prolonged exposure to extremely cold temperatures, the VE opined that there would be somewhat fewer gate guard and dispatcher positions available.  *Id.*

On follow-up questioning of the VE, Plaintiff's counsel added limitations that the VE rejected based on her conclusion that Plaintiff was not credible.  First, Plaintiff's counsel asked the VE if a person who would not be able get out of bed and function normally due to pain an average of once a week would be able to maintain gainful employment.  AR 48.  The VE responded that such a person would not be able to maintain gainful employment.  *Id.*  Next, Plaintiff's counsel asked the VE if a person who has to lie down for a half an hour during a workday would be able to maintain gainful employment.  *Id.*  The VE responded that such a person would not be able to perform in the competitive labor market.  *Id.*

## C.  The ALJ's Decision

In her ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 416.920(a).  At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 9, 2003.  AR 10.  At the second step, the ALJ determined that Plaintiff had severe impairments of "a disorder of the right leg, felt to be due to nerve entrapment secondary to inguinal hernia repair surgery done October 10, 2003; a disorder of the right arm status post biceps rupture, diagnosed on July 8, 2006; and degenerative disk disease of the lumbar spine, diagnosed in April 2007."  *Id.*  At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14.

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work ..., with the option to alternate, at will, between sitting and standing, no more than occasional overhead lifting, stooping, or kneeling, and no prolonged exposure to extreme cold."  AR 14.  After concluding that Plaintiff was unable to perform any past relevant work (AR 19), the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing based on the VE's testimony.  AR 19-20.

### III.  Standard of Review

In reviewing the Commissioner's decision,  I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).  Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed.  *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV.  Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ failed to properly weigh medical opinions in the record; (2) whether the ALJ properly determined Plaintiff's RFC; and (3) whether the Commissioner met his burden at proof at step 5 of the sequential process.

### A.  The ALJ's Analysis of Medical Opinions Regarding Plaintiff

Generally, an ALJ gives more weight to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(d)(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," it is given controlling weight.  *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and other enumerated factors must be applied to determine the appropriate weight to give the opinion.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. R. 9602p, 1996 WL 374188 at *4).  These factors include length of the treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization.  20 C.F.R. § 404.1527(d)(2) - (6).

In all cases, the ALJ must give "good reasons" for the weight given a treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).  The ALJ need not, however, expressly apply each of the enumerated factors in deciding what weight to give a treating physician's opinion.  *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ's decision, however, must be "sufficiently specific to make clear to any subsequent reviewer the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  *Watkins*, 350 F.3d at 1300 (citations omitted).

Here, the ALJ stated that she was not giving any weight to the opinions of Plaintiff's workers' compensation physicians, *ie.* Drs. Lineback, Eaton, Hadjian, Rogers, and Kent, that Plaintiff was temporarily and totally disabled because (1) the finding of disability is an issue reserved to the Commissioner; (2) the disability hearing before her was de novo; and (3) the workers' compensation criteria for disability are different from those of the Social Security Administration.  AR 19.  The ALJ did not, however, specify what weight, if any, she was giving to the other opinions of these providers or the reasons for the assigned weight.

Although the ALJ erred in failing to clear identify what weight she was giving to the other opinions of Drs. Lineback, Eaton, Hadjian, Rogers, and Kent and the reasons for that weight, *see Watson, supra,* I conclude that this error was harmless in light of the substance of the opinions of these providers.  Specifically, none of these doctors rendered any opinion, express or otherwise, that Plaintiff would be unable to perform any work on an ongoing basis.  To the contrary, Dr. Lineback recommended that Plaintiff be re-trained for a different vocation, and Dr. Hadjian opined that Plaintiff could ultimately return to work as a yardman.

As for Dr. Ketelhohn, the appropriate weight to be given his opinions as a non-treating and non-examining source depends on the degree to which he explained his opinions and the degree to which his opinions considered and were consistent with all of the pertinent evidence, including opinions of treating and examining sources.  20 C.F.R. § 404.1527(d)(3) & (4).

The ALJ attached "considerable" weight to the opinions of Dr. Ketelhohn on the basis that they were well supported by the objective medical findings; gave full and well-reasoned consideration of Plaintiff's symptoms; and were consistent with the record as a whole including newer medical evidence.  AR 18.  This conclusion applied the correct legal standard and was

supported by substantial evidence in the record as a whole.

In contrast to Dr. Ketelhohn, Dr. Arora gave almost no explanation for the sweeping limitations she attributed to Plaintiff.  Furthermore, in one instance in which Dr. Arora did offer some explanation, the explanation was inconsistent both with the limitations she attributed to Plaintiff and other evidence in the record.  Specifically, Dr. Arora identified a laceration of the tendon on Plaintiff's upper right arm to support her opinion that Plaintiff has been limited to occasional use of his left hand for a variety of activities since 2003.  The record is devoid of any complaints by Plaintiff relating to the use of his left hand and reflects that Plaintiff did not injure his right arm until 2006.  Under these circumstances, the ALJ's decision to give no weight to Dr. Arora's opinions is consistent with the applicable legal standard and supported by substantial evidence in the record.

Finally, the opinions of Mr. Knauf, a physician's assistant, do not constitute medical opinions from an acceptable medical source.  20 C.F.R. §§ 404.1513(a) & 404.1527(a)(2).  Thus, although the same factors are relevant in determining the weight to give Mr. Knauf's opinions, the fact that he is a physician's assistant may be a basis for giving less weight to his opinions than those of physicians.  SSR 06-03, 2006 WL 2329939 *5.  Conversely, Mr. Knauf's opinions may be entitled to more weight than those of physicians under certain circumstances including better supporting evidence for and explanation of Mr. Knauf's opinions.  *Id.*

The ALJ gave no weight to the opinions of Mr. Knauf because (1) his opinion that Plaintiff was "essentially totally disabled" was reserved for the commissioner; (2) he appeared to accept Plaintiff's history at face value as reflected by errors in his notes; and (3) there was no evidence to support references in Mr. Knauf's notes that Plaintiff was also seen by Dr. Joshi.

AR 18.  Apart from Mr. Knauf's opinion that Plaintiff was "essentially totally disabled" that was properly rejected by the ALJ, *see* 20 C.F.R. § 404.1527(e), there is little in Mr. Knauf's records to support a conclusion Plaintiff is unable to perform any work on an ongoing basis in any event.  There is therefore no basis to find that the ALJ improperly weighed the opinions of Mr. Knauf.

Alternatively, Plaintiff argues that the ALJ should have re-contacted Plaintiff's treating sources or ordered a consultative examination. The ALJ was only required to obtain additional information from Plaintiff's treating sources, however, if the information from those sources was inadequate for her to determine whether Plaintiff was disabled.  20 C.F.R. § 404.1512(e).  There is nothing in the ALJ's decision to suggest that she lacked sufficient medical records to determine whether Plaintiff was disabled within the meaning of the Act.  There is likewise nothing in the ALJ's decision to suggest that a consultative examination would materially assist in resolving the issue of disability.  *See Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997) (consultative exam should be ordered when evidence establishes reasonable possibility of existence of disability and exam results could reasonably be expected to be of material assistance in resolving this issue).

Accordingly, the ALJ did not err in weighing the opinions of medical sources or in failing to further develop the record.

## B.  The ALJ's Determination of Plaintiff's RFC

For the reasons set forth above, I have already determined that there was no reversible error in the ALJ's analysis of medical opinions rendered in this case.  It follows that there can be no error in the ALJ's  determination of Plaintiff's RFC as a result of this analysis.

Additionally, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC (1) by failing to consider the effect of his right leg impairment; (2) by faulting Plaintiff for returning to work and going to computer school after his alleged disability onset date; (3) by misstating when Plaintiff first complained of post-surgery pain; (4) by faulting Plaintiff for failing to follow recommendations for managing his pain without giving Plaintiff the opportunity to explain why he did not do so; (5) by faulting Plaintiff for not listing back pain as an impairment on disability reports; (6) by failing to consider the combined impact of all of Plaintiff's impairments including insomnia and asthma/breathing problems; (7) by accepting that Plaintiff's daily activities demonstrated an ability to work; and (8) by rejecting Plaintiff's assertion that his right hand hurts constantly.

Plaintiff's supporting arguments essentially ask me to improperly re-weigh the evidence and come to different conclusions than the ALJ. *See Kelley, supra,* 62 F.3d at 337. In addition, many of the alleged errors represent some of the factors the ALJ considered in assessing Plaintiff's credibility and therefore had limited impact on the ALJ's determination of Plaintiff's RFC.

Credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence. *Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991). Although the ALJ misstated when Plaintiff first complained of post-surgery groin pain, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not very credible. Among other things, Plaintiff worked and attended school after the alleged onset of disabling pain and provided testimony at the hearing that was inconsistent with the medical records and written applications for benefits.

Also significant to the ALJ's credibility determination was the fact that Plaintiff did not follow prescribed medical treatments for pain management.  Plaintiff seizes upon the fact that the ALJ acknowledged that the issue of why Plaintiff had not followed prescribed treatments for pain management was "not fully investigated" even though SSR 82-59 provides a claimant should be given an opportunity to fully address the specific reasons he had not done so.  AR 17.  SSR 82-59 provides that  "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability."  1982 WL 31384 at *1.

Here, the ALJ expressly stated that she was not denying Plaintiff's claim of disability based on his noncompliance with prescribed treatment but that this noncompliance was relevant to his credibility.  AR 17.  Under these circumstances, the ALJ did not err in failing to apply the factors set forth in *Frey v. Bowen,* 816 F.2d 508 (10th Cir. 1987), or further develop the record as to why Plaintiff had not followed prescribed medical treatments for his pain.  *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) ("ALJ properly considered what attempts Plaintiff made to relieve his pain - including whether he took pain medication - in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.").

As for the remaining alleged errors, there is insufficient evidence that Plaintiff suffered from functional limitations beyond those identified by the ALJ or that the ALJ failed to consider the combined impact of Plaintiff's impairments.  In sum then, the ALJ's determination of Plaintiff's of Plaintiff's RFC was supported by substantial evidence in the record.

### C.  The ALJ's Analysis at Step 5 of the Sequential Process

At step 5 of the sequential process, the ALJ relied on testimony from the VE in determining that there were a significant number of jobs in the national economy that Plaintiff was capable of performing.  Plaintiff argues that this analysis by the ALJ was fatally flawed because of alleged errors the ALJ made in determining Plaintiff's RFC as previously discussed in this Order.  Because I have already determined that there is no reversible error in the ALJ's determination of Plaintiff's RFC, it follows that there is no reversible error in the ALJ's questioning of the VE based on this RFC or the ALJ's reliance on the VE's responses to this questioning.

## V.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.


Dated: April ___17___, 2012 in Denver, Colorado.


BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE